# CIRCUIT COURT OF BALTIMORE CITY

Filed March 28, 1901.

WILLIAM KEYSER ET AL.
VS.
GEORGE M. UPSHUR ET AL.

*Charles J. Bonaparte, William Reynolds* and *R. E. Lee Marshall* for plaintiffs.

*Alonzo L. Miles* for defendants.

RITCHIE, J.—

The only question now to be passed on is, whether or not the twenty probationary police officers referred to *were nominated* by the Board of Police Examiners for positions on the force, before they were appointed to the same by the Board of Police Commissioners. Every other question touching the validity of their appointment has been settled by the recent decision of the Court of Appeals in this case.

Under the Act of 1900, Ch. 16, which has just been construed by the Court of Appeals, the Board of Examiners is required to furnish the Board of Commissioners, with the graded lists of applicants eligible for appointment

or promotion on the police force; and before appointments or promotions can be made by the Commissioners, the Examiners must make nominations for the same to the Board of Commissioners from such graded lists, or by them as a whole, and in the order in which the names appear thereon. The Commissioners are not required to appoint in the same order, but they can make no valid appointment except upon nomination by the Examiners.

In making these nominations the Board of Examiners, in the absence of any rule adopted by it to the contrary, is not restricted to the number of appointments to be made. It may in its judgment nominate a number just equal to the number of appointments to be made, or may nominate any larger number, or may nominate the entire graded list.

It is also decided that the act of nomination may be by a separate act, that is, made from the graded list *after* it has been furnished to the Commissioners, or, *when the list is furnished*, the whole of the names thereon may be at the same time nominated.

On November 20th, 1900, when the Board of Commissioners was about to appoint a large number of probationary officers, it was furnished by the Board of Examiners with the entire graded list of those eligible for such position, which contained two hundred and ninety names, and the twenty officers in question were appointed therefrom.

If, when this list was furnished, all the names thereon were at the same time nominated by the Examiners for appointment, these appointments are valid; but if the list was furnished only in compliance with the duty of the Examiners to furnish the Commissioners with the graded list of such eligibles, and without any purpose of nominating the names thereon, the appointments are invalid. Whether so nominated or not, is the only question open.

The bill alleges that these officers were appointed *without having been first nominated by the Examiners*, and the Court of Appeals remanded the case in order that the defendants might file their answer and that testimony might be taken on this allegation. The answer has been filed and testimony taken.

In referring to this question of fact the Court of Appeals says, viz: *"This furnishing of the whole list was evidently treated by both boards as a nomination of all the persons appearing thereon* in the order of merit as they stood enrolled. *If this was intended by the Examiners to be a nomination of all the persons named on the graded list, then there was a compliance with the statute* as we have just above indicated and determined."

It appears from the evidence that in two or three instances after their organization, the Examiners transmitted the graded list, and, at the same time, in express terms, nominated certain names therefrom for positions to be filled. A discussion then arose between the two Boards in respect to the extent of the power of nomination by the Examiners. The Board of Commissioners was advised in the premises by its counsel, Mr. Miles, and, upon invitation, Mr. Miles also, on July 13th, 1900, conferred with the Board of Examiners. The result of it all was that from that time forward the Board of Examiners, in each instance, as occasion required, including the report of the list now in question, transmitted the entire graded list without, *in terms*, making any nominations.

Mr. Hannibal, the president of the Board of Examiners, testifies that, at the meeting of July 13th he thinks he asked Mr. Miles if the Board could nominate the entire list, and was advised by him that it could do so; that after the conference with Mr. Miles he and his colleague, Mr. Thomas (Mr. Linville not being present at this meeting), discussed the matter and concluded to send in the entire list as nominations and passed a resolution to that effect.

Mr. Hannibal further testifies, viz: "The resolution was that we would nominate the entire eligible list, that contained the two hundred and ninety names, and that in the future we would always nominate the entire eligible list."

Also, viz: "On July 13th the Board of Examiners ordered the Secretary of the Board to transmit the entire eligible list to the Board of Police Examiners (Commissioners) as nominations, and in the future we would always send down the entire eligible list to the Board of Police Commissioners as nominations."

Again he testifies, viz: "The action and the intention (of the Examiners in furnishing the list in question) was that the entire two hundred and ninety names were to be sent down to the Board of Police Commissioners, as nominations."

Mr. Fenge, Secretary to the Examiners, testifies that, after July 13th, 1900, he was instructed "to transmit the list of eligibles to the Board of Police Commissioners in the sense of nominations;" that "in saying that 'I hereby transmit the list,' I mean the list which the Board of Police Examiners nominated."

Mr. Upshur, president of the Board of Commissioners, testifies, viz: "The Board of Police Commissioners understood that the list referred to (of the two hundred and ninety names) was sent down as nominations from the Board of Police Examiners, and was treated as such."

Mr. Linville, one of the Examiners, and a witness in rebuttal for the plaintiffs, but who was not present at the meeting of July 13th, testifies in substance that, after that date the entire lists were sent in; that he knew the Board of Commissioners made their appointments therefrom without expecting or waiting for further action by the Examiners; but that he did not consider that any nominations were made by sending in the lists, because the names were not in express terms said to be nominated; that for this reason he did not understand the list of the two hundred and ninety names as having been nominated when sent in; "the word 'nominations' not having been used; consequently I could not have so understood it."

Again he testifies that, if Mr. Hannibal had testified in reference to the action of the Board on July 13th, in the manner stated by counsel (and as Mr. Hannibal had in fact testified) it would satisfy him "conclusively that it was Mr. Hannibal's intention to transmit the entire graded list as a list of nominations."

Without any further review of the testimony it is, I think, fully shown that, in transmitting the list in question, the Board of Examiners, (a majority, of course, constituting the Board), intended at the same time to nominate all the eligibles named thereon for positions on the probationary force, and that the entire list was at the time of transmission so nominated.

As the Court of Appeals has decided, it was competent for the Board to thus nominate the entire list, and, having done so, there was a compliance with the statute, and the appointments in question are valid.